No. 17-15458-SS

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

REALITY LEIGH WINNER,

Defendant-Appellant.

On Appeal from the United States District Court
for the Southern District of Georgia
No. 17-cr-00034 (Hon. J. Randal Hall)

## PLAINTIFF-APPELLEE UNITED STATES OF AMERICA'S
## RESPONSE IN OPPOSITION TO MOTION FOR RELEASE

BOBBY L. CHRISTINE
UNITED STATES ATTORNEY

R. Brian Tanner                         Julie A. Edelstein
Assistant United States Attorney        David C. Aaron
                                        Trial Attorneys

United States Attorney's Office         Department of Justice
22 Barnard Street, Suite 300            600 E Street NW
Savannah, Georgia 31401                 Washington, D.C. 20004
(912) 652-4422                          (202) 233-2260

No. 17-15458-SS
*United States v. Winner*

# CERTIFICATE OF INTERESTED PERSONS
# AND CORPORATE DISCLOSURE STATEMENT

Aaron, David C., U.S. Department of Justice

Barnard, Thomas H., Attorney for Appellant

Bell, Jr., John C., Attorney for Appellant

Chester, Matthew S., Attorney for Appellant

Christine, Bobby L., United States Attorney

Durham, James D., Former Assistant United States Attorney

Edelstein, Julie A., U.S. Department of Justice

Epps, Hon. Brian K., United States Magistrate Judge

Hall, Hon. J. Randal, United States District Judge

McCook, Jill E., Attorney for Appellant

Nichols, Titus T., Attorney for Appellant

Rafferty, Brian T., Assistant United States Attorney

Solari, Jennifer G., Assistant United States Attorney

Switzer, Brett A., Attorney for Appellant

Tanner, R. Brian, Assistant United States Attorney

United States Department of Justice

Weil, Amy Levin, Attorney for Appellant

No. 17-15458-SS

*United States v. Winner*

Whitley, Joe D., Attorney for Appellant

Winner, Reality Leigh, Appellant

No publicly traded company or corporation has an interest in the outcome of this case or appeal.

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument is not warranted and would not significantly aid the decisional process because the briefs adequately present the facts and legal arguments.  *See* Fed. R. App. P. 34(a)(2)(C).

# TABLE OF CONTENTS

Certificate of Interested Persons and Corporate Disclosure Statement ............................................................................ C-1

Statement Regarding Oral Argument ...................................... i

Table of Contents ...................................................................... ii

Table of Citations ..................................................................... iv

Statement of the Issue ............................................................... 1

Statement of the Case ................................................................ 1

    I.   Facts ............................................................................. 1

    II.  Proceedings Below ...................................................... 6

    III. Standard of Review .................................................... 11

Summary of the Argument ........................................................ 11

Argument .................................................................................... 12

    I.   Legal Standards ........................................................... 12

    II.  The District Court Properly Applied the Bail Reform Act and Correctly Determined that Winner Must Be Detained Pending Trial ............................................... 14

        A. The District Court Correctly Found that All Four Bail Reform Act Factors Weigh in Favor of Pretrial Detention .............................................. 15

           1. Nature and Circumstances of the Offense ............... 15

           2. Weight of the Evidence ............................................. 17

3. History and Characteristics of the Defendant .......... 19

4. Nature and Seriousness of Danger Posed by
   Release ................................................................ 20

B. No Conditions Can Reasonably Assure Winner's
   Appearance or the Safety of the Community ................ 23

III. Winner Should Also Be Detained as a Danger to
     the Community ...................................................... 24

Conclusion ........................................................... 25

Certificate of Compliance and Service .................................... 26

# TABLE OF CITATIONS

## Cases

*United States v. Al-Arian*, 280 F. Supp. 2d 1345 (M.D. Fla. 2003) ................................................................................. 19

*United States v. Giordano*, 370 F. Supp. 2d 1256 (S.D. Fla. 2005) ............................................................................. 14, 21

*United States v. Holmes*, 438 F. Supp. 2d 1340 (S.D. Fla. 2005) ................................................................................. 24

*United States v. Hurtado*, 779 F.2d 1467 (11th Cir. 1985) .................... 11

*United States v. King*, 849 F.2d 485 (11th Cir. 1988) ................ 11, 12, 21

*United States v. Medina*, 775 F.2d 1398 (11th Cir. 1985) ...................... 12

*United States v. Rosen*, 445 F. Supp. 2d 602 (E.D. Va. 2006) ............... 18

*United States v. Truong Dinh Hung*, 629 F.2d 908 (4th Cir. 1980) ................................................................................. 18

## Statutes

18 U.S.C. § 3142(e), (f), (g) ............................................. *passim*

18 U.S.C. § 793(e) .......................................................... *passim*

## Sentencing Guidelines

U.S.S.G. § 2M3.3 ........................................................... 19

U.S.S.G. § 3B1.3 ........................................................... 19

## Rules

Fed. R. App. P. 34(a)(2)(C) ................................................. i

## Other Authorities

Exec. Order 13526 § 1.2 ..................................................... 3

## STATEMENT OF THE ISSUE

Whether the district court properly ordered Winner, who is charged with disclosing Top Secret intelligence reporting to a news outlet, to be detained pending trial as a flight risk, after correctly finding that the case against her is strong and serious and that she has shown repeated contempt for the United States as well as the intent to live abroad.

## STATEMENT OF THE CASE

### I.    Facts

From January 2013 through November 2016, Reality Leigh Winner ("Winner") served in the United States Air Force.  On November 9, 2016, just prior to the termination of her access to classified information, Winner researched whether it was possible to insert a thumb drive into a Top Secret computer without being detected, and she then inserted a thumb drive (which the government never recovered) into a Top Secret computer.  Dkt. 163 at 10; Dkt. 115 at 5-6; Dkt. 120 (Transcript of Detention Hearing (Sept. 29, 2017) (hereinafter, "Tr.")) at 48-49.  Soon after her discharge from the Air Force, Winner researched job opportunities that would provide her renewed access to classified information.  She contemporaneously searched for information about

1

anti-secrecy organizations such as Anonymous and Wikileaks.  Dkt. 163 at 10.

In December 2016, Winner moved to Augusta, Georgia.[1]  On or about February 9, 2017, Winner became a linguist with Pluribus International ("Pluribus"), assigned to the National Security Agency. She signed a non-disclosure agreement in which she both promised to keep secret classified information and attested she was accepting this responsibility "without any mental reservation or purpose of evasion." Dkt. 107 at 4.

Notwithstanding this oath, two days before starting work with Pluribus, Winner used her phone to capture an image of a webpage listing eight "securedrop" addresses for media outlets seeking leaked information.  Dkt. 163 at 10; Dkt. 109 at 2.  Also, on February 9, 2017, Winner sent a message to her sister mocking Pluribus's security training. Dkt. 163 at 11; Dkt. 110 at 28 ("[I]t was hard not to laugh when [the security officer] was like, "yeah so uh we have guys like Edward Snowden

---

[1]  Winner does not own any property in the Southern District of Georgia and has no family members who permanently reside in it.  Tr. at 118.

. . . so uh we uh have to keep an eye out for that insider threat, especially with contractors . . . .").

In the ensuing months, Winner repeatedly expressed her contempt for the United States. On February 25, 2017, Winner wrote that she was "gonnafail" her polygraph examination, which would ask if she had "ever plotted against" the government; claimed that she said she "hate[s] America like 3 times a day"; and when asked "But you don't actually hate America, right?," responded, "I mean yeah I do it's literally the worst thing to happen on the planet." Dkt. 163 at 11; Dkt. 110 at 32. On March 7, 2017, Winner expressed delight at an alleged compromise of classified information and indicated that she was on Assange and Snowden's "side." Dkt. 163 at 11; Dkt. 110 at 34.

On May 5, 2017, a U.S. Intelligence Community Agency (the "Agency") produced an intelligence report and attachment (collectively, the "intelligence reporting") that were both classified at the Top Secret//SCI level and marked as such.[2] On May 30, an online news outlet

_____

[2]    Information may be classified as "Top Secret" if its unauthorized disclosure could reasonably result in exceptionally grave damage to the national security. Exec. Order 13526 § 1.2. Access to Sensitive Compartmented Information (SCI) is further restricted.

(the "News Outlet") contacted the Agency and emailed it a scanned copy of a document, which the News Outlet believed was a classified document authored by the Agency. The pages of the document appeared to be folded and/or creased, suggesting that a hard copy had been hand carried out of a secure space and provided to the News Outlet. Subsequent analysis confirmed that the document in the News Outlet's possession was the intelligence reporting.

An internal Agency audit identified only two individuals who had printed the reporting and attachment (which were both transmitted to the News Outlet). Winner was one of these two individuals—she had printed them on May 9—and she had also been in contact with the News Outlet. *See* Tr. at 22-23. Subsequent investigation revealed that on May 9, Winner searched for ways to securely transmit information to news outlets. Tr. at 27. Also, Winner later searched websites, including the News Outlet's, to see whether the information she leaked had been published. *Id.*

On June 3, 2017, the Federal Bureau of Investigation (FBI) conducted a voluntary interview of Winner while executing a search warrant at her residence. During the interview, Winner admitted

knowing the content of the intelligence reporting was sensitive and classified; printing it; secreting it under her clothing; removing it from the building where she worked; putting it in an envelope; mailing it to the News Outlet; and knowing that the News Outlet did not have authority to receive it. *See* Dkt. 108 at 53-56, 59, 67. She further admitted knowing the intelligence reporting concerned sensitive technical capabilities—sources and methods—which could be compromised by her disclosure. *Id.* at 66.

Winner also admitted her criminal conduct on recorded calls following her arrest, and made clear her lack of remorse. *See, e.g.*, Dkt. 109 at 5 ("I leaked a document. And they were able to trace it back to me. And it's kind of an important one."); *id.* at 9 ("Yeah, I keep telling myself to act more like I think I did something wrong" with a laugh); *id.* ("Like pretend like I really feel in my heart regret what I did and that I did something wrong. Not because I'm in jail right now because what I did was inherently wrong."); Dkt. 99 at 4 (Winner told her mother she was prepared to "go nuclear in the press" unless the court released her from custody).

While executing the June 3 search warrant, the FBI recovered items of interest including: (1) Winner's handwritten, detailed instructions regarding how to download anonymizing Tor browsing software at the highest security/privacy setting, replace a cellular phone's SIM card, and create a burner email account; (2) the URL for a burner email account; (3) highly sensitive information relating to foreign intelligence targets associated with terrorism; (4) Winner's handwritten note, "I want to burn the White House down – Find somewhere in Kurdistan to live or Nepal haha maybe"; (5) references to Taliban military leaders; and (6) internet searches involving traveling, working, and living in Kurdistan, Iraq, Afghanistan, Jordan, and the Palestinian territories, including information about flights to Kurdistan and Erbil, moving to Palestine, and obtaining visas for Kurdistan and Afghanistan. Dkt. 163 at 11-12 (citing testimony and exhibits).

## II.    Proceedings Below

On June 7, 2017, a grand jury in the Southern District of Georgia returned a one-count indictment charging Winner with violating Title 18, United States Code, Section 793(e) (Willful Retention and Transmission of National Defense Information (NDI)) (hereinafter, "Section 793(e)").

Winner has been ordered detained three times:  twice by Magistrate Judge Epps, following two separate detention hearings, and again by District Court Judge Hall.  *See* Dkt. 27; Dkt. 115; Dkt. 163.

The district court's November 27, 2017 detention order resulted in this appeal.  Dkt. 163.  The court determined, after a "*de novo* review of the detention proceedings before the Magistrate Judge, the arguments of counsel in brief, and the relevant law," that "the Magistrate Judge properly considered the factors giving rise to detention and properly concluded that no condition or combination of conditions would reasonably assure the safety of the community and Defendant's appearance at trial."  *Id.* at 1, 4.[3]  The court made those determinations based on the factors set forth in 18 U.S.C. § 3142(g).

First, regarding the nature and circumstances of the offense, "[a] plain reading of the indictment demonstrates the serious nature of the offense."  *Id.* at 5.  Considering Winner's prior access to classified

---

[3]     The district court incorporated the factual findings, as well as the legal standards set forth in Judge Epps's written opinion, which included that dangerousness must be established by clear and convincing evidence.  *See* Dkt. 163 at 4; Dkt. 115 at 1.  Winner's argument that the district court applied the wrong legal standard is meritless.  *See* Winner Mot. at 20.

information, and "particularly in light of the 'covert communications package' . . . that she had created around the time of taking the NSA position and her apparent antipathy toward the United States of America, the gravity of Defendant's alleged crime is unassailable." *Id.* at 5-6.

Regarding the weight of the evidence, the court found that Winner's admissions to the FBI "appear to hit upon all the elements of the crime." *Id.* at 7. Moreover, the "investigatory facts" that led the FBI to the "independent conclusion" that Winner was the source of the leaked document will be "compelling evidence against her." *Id.* at 8.

Turning to Winner's history and characteristics, the court concluded that that

> the negative implications from the evidence pertaining to Defendant's character, her mental state, her conduct in the months before her arrest, and her lack of community ties significantly outweigh the positive aspects of her family ties, commendable service in the Air Force, care for environmental issues and animals, humanitarianism, and lack of criminal record.

*Id.* at 9.

The court then catalogued the evidence in support of that finding. Such evidence included:  (1) Winner's research concerning whether she

8

would be detected if she inserted a thumb drive into a Top Secret computer and subsequent insertion of a thumb drive into such a computer; (2) her searches for jobs requiring a security clearance while also researching the Taliban and Anonymous; (3) her note about her desire to burn down the White House; (4) her internet searches concerning working and living abroad; (5) the screenshot concerning how to anonymously provide information to eight news outlets; (6) her mocking of security training; (7) her statements evincing contempt for the United States; and (8) her notes regarding Tor, swapping SIM cards, burner email accounts, and information relating to foreign intelligence targets associated with terrorism. *Id.* at 10-12. In sum, the evidence "shows a person who sought out employment in a classified position with the intent to anonymously share information with news outlets and to cover her tracks while doing so." *Id.* at 13.

Finally, considering Winner's knowledge of other classified information, as well as her antipathy towards the United States, the court found "that releasing Defendant prior to trial would pose a danger to the community, particularly to the national security." *Id.* at 14.

Specifically regarding risk of flight, the court assessed that Winner

9

has "few ties" to the community. *Id.* at 14. She has also shown a "strong intent" to live and work abroad, "even research[ing] airline flights to Kurdistan and Erbil and work visas in Afghanistan." *Id.* at 14-15. Of course, her pre-existing desire to live abroad "is no doubt quickened" by the felony charges pending against her. *Id.* at 15. Importantly, Winner's fluency in Farsi, Dari, and Pashto would enable her to live and sustain herself in many Middle Eastern countries, and she has the financial means to flee, evidenced by a trip outside the United States just before her arrest. *Id.* Such evidence "takes the chances of Defendant fleeing the jurisdiction of this Court beyond the mere theoretical and into the realm of probable." *Id.* Accordingly, the court found by a preponderance of the evidence that Winner is a "serious flight risk." *Id.*

In ordering Winner detained, the court also explained why conditions of release—such as surrendering her passport, posting a property bond, and agreeing to wear a monitoring bracelet and refrain from internet usage and media contact—would not be sufficient to assure her appearance. Considering the evidence that Winner "does not wish to be in America, may even wish to cause harm to national security, and has the means to live abroad," the court determined that Winner "will flee

10

despite these conditions and assurances." *Id.* Likewise, such conditions do not adequately protect against further unauthorized disclosures.

### III. Standard of Review

Review of a district court's pretrial detention order "presents mixed questions of law and fact to be accorded plenary review on appeal." *United States v. Hurtado*, 779 F.2d 1467, 1471-72 (11th Cir. 1985). Factual findings—such as findings under 18 U.S.C. § 3142(g)(3) (the history and characteristics of the person) and (g)(4) (the nature and seriousness of the danger to any person or the community that would be posed by the person's release)—are subject to a "clearly erroneous" standard of review. *Id.* at 1472; *see also United States v. King*, 849 F.2d 485, 487 (11th Cir. 1988) (cautioning that factual findings should not be disturbed unless clearly erroneous).

### SUMMARY OF THE ARGUMENT

The district court properly determined after a full review of the factual record that "based upon evidence that Defendant does not wish to be in America, may even wish to cause harm to national security, and has the means to live abroad, Defendant will flee." Dkt. 163 at 15-16. Further, the district court correctly found that *all* of the factors in the

detention analysis weigh in favor of detention, and that no condition or combination of conditions will reasonably assure both Winner's appearance and the safety of the community. Notably, *either* of those findings is sufficient to detain Winner. *See King*, 849 F.2d at 488. Accordingly, even if Winner's argument concerning permissible grounds for detention were correct—which it is not—the Court should still detain Winner based on risk of flight.

## **ARGUMENT**

### **I.    Legal Standards**

The Bail Reform Act establishes a framework for determining whether to detain a defendant pending trial. 18 U.S.C. § 3142. Pursuant to subsection (e), a court must detain a defendant pending trial if the court finds that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). The government can establish "risk of flight" by a preponderance of the evidence. *United States v. Medina*, 775 F.2d 1398, 1402 (11th Cir. 1985). It must establish "danger to the community" by clear and convincing

evidence.  18 U.S.C. § 3142(f).  Either is a sufficient, independent basis for pretrial detention.

Subsection (f) sets forth the circumstances under which a court must convene a detention hearing.  Such a hearing is convened upon the motion of the government:  (1) under subsection (f)(1), when certain enumerated crimes are charged;[4] or (2) under subsection (f)(2), when there is a serious risk of flight or obstruction of justice.  *Id.* § 3142(f).

Finally, subsection (g) specifies the factors a court must consider in determining whether a defendant should be detained pending trial:  (1) the nature and circumstances of the offense charged; (2) the weight of the evidence; (3) the person's history and characteristics; and (4) the nature and seriousness of the danger to the community that would be posed by the person's release.  *Id.* § 3142(g).

---

[4]    Winner is not charged with any crime specified in this subsection.

## II.    The District Court Properly Applied the Bail Reform Act and Correctly Determined that Winner Must Be Detained Pending Trial

The district court detained Winner based on risk of flight. The record amply supports this finding. Accordingly, the Court need not reach Winner's argument that because she did not commit one of the crimes enumerated in 18 U.S.C. § 3142(f)(1), she cannot be detained as a danger to the community. Winner Mot. at 5-10.[5]

Moreover, dangerousness is an essential factor to consider in any detention analysis. The Section 3142(g) factors are the same regardless of whether the hearing is triggered by Section 3142(f)(1) or, as here, by Section 3142(f)(2), and the fourth factor is "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g)(4). As the district court explained in this case, regardless of the basis for the detention hearing, "[i]mportantly, the 'dangerousness' of this Defendant is still a factor to be considered under 18 U.S.C. § 3142(g)(4)." Dkt. 163 at 2 n.2 (citing *United States v. Giordano*, 370 F. Supp. 2d 1256, 1261 n.1 (S.D. Fla. 2005)).

---

[5]    Winner's argument is incorrect. *See* Part III, *infra.*

Winner even concedes that dangerousness is relevant "insofar as it suggests a risk of flight." Winner Mot. at 11. The district court considered dangerousness within the context of its analysis of whether Winner is a flight risk and based its decision on its conclusion that "Defendant is a serious flight risk." Dkt. 163 at 17. This Court, therefore, need not consider the question of whether Winner could be detained solely on the basis of her dangerousness.

## A. The District Court Correctly Found that All Four Bail Reform Act Factors Weigh in Favor of Pretrial Detention

The district court correctly found that each of the four factors in the Bail Reform Act, discussed below, weighs in favor of detention. The district court's findings on these factors, as well as the district court's specific findings regarding risk of flight, are clearly supported by the record. Therefore, the district court's holding should be affirmed.

### 1. Nature and Circumstances of the Offense

As the district court correctly found, "the gravity of Defendant's alleged crime is unassailable." Dkt. 163 at 6. "A plain reading of the indictment demonstrates the serious nature of the offense." *Id.* at 5. Winner is charged with the unauthorized disclosure of a Top Secret

document, which by definition is a disclosure that can be "expected to cause *exceptionally grave damage to the national security*." *Id.* at 5 n.4. In fact, as the government explained in a classified setting at the September 29, 2017 detention hearing, Winner's crime did result in exceptionally grave harm to the national security of the United States.

Winner's references to certain other defendants charged under Section 793(e) (or other statutes) who were released pretrial are unavailing. *See* Winner Mot. at 14. Detention decisions must be considered on a case-by-case basis, and none of the cases Winner has cited presents the unique circumstances of this prosecution: a defendant who has shown repeated contempt for her country; devised and executed a plan to harm her country; conducted herself in a manner since arrest showing her continued contempt for, and intent to further harm, the United States (as evidenced by her lack of remorse in recorded telephone calls and threat to "go nuclear in the press" unless released); and a demonstrated desire to live abroad and the resources as well as skills necessary to do so. *See also* Dkt. No. 115 at 3 ("[T]he detention analysis . . . does not lend itself to easy comparisons across cases because of its

intense focus on the unique facts of each case and the unique characteristics of each defendant.").

As the district court found, this factor clearly weighs in favor of detention.

### 2.    Weight of the Evidence

The district court also correctly found that the "evidence shows [Winner to be] a person who sought out employment in a classified position with the intent to anonymously share information with news outlets and to cover her tracks while doing so" and who "willfully secreted the classified document out of the NSA and mailed it to the online news outlet, which did not have authority to receive it."  Dkt. 163 at 6, 13. Indeed, as the district court observed, Winner's "admission to these relevant facts appear to hit upon all the elements of the [charged] crime," and, even apart from her own statements, there is "compelling evidence against her."  *Id.* at 7-8.

To convict a defendant under Section 793(e), the government must prove that a defendant in unauthorized possession of a document containing NDI retained that document without authorization, or transmitted it to someone not entitled to receive it, and knew that doing

17

so was against the law. *See generally* Dkt. 122. As described in the Statement of the Facts, *supra*, and found by the district court, the evidence against Winner is overwhelming—especially when coupled with her admissions to the FBI and on recorded calls. *See* Dkt. 163 at 6-8; Dkt. 115 at 4.

In contesting the "weight of the evidence" factor, Winner never claims that the government will be unable to prove that she disclosed the intelligence reporting to the News Outlet. Rather, without any support, Winner claims that the government will have difficulty proving that the information in the intelligence reporting constituted NDI. Winner Mot. at 15-16.

Winner is grasping at straws. The intelligence reporting is classified at the Top Secret//SCI level. It is well-established that classification is relevant when determining whether information constitutes NDI. *United States v. Truong Dinh Hung*, 629 F.2d 908, 918 (4th Cir. 1980); *see also United States v. Rosen*, 445 F. Supp. 2d 602, 623 (E.D. Va. 2006) ("[T]he classification of the information by the executive branch is highly probative of whether the information at issue is 'information relating to the national defense . . . .'"). Moreover, the

18

information proffered in the classified portion of the September 29, 2017 detention hearing underscores the futility of Winner's unsupported arguments on this point.[6]

Finally, the significant sentence Winner is facing provides incentive to flee.[7] *See United States v. Al-Arian*, 280 F. Supp. 2d 1345, 1358 (M.D. Fla. 2003) ("[T]he stronger the government's case, especially if the sentence will be severe, the greater a defendant's incentive to flee.").

### 3.    History and Characteristics of the Defendant

The district court was seriously concerned about Winner's duplicity and lack of trustworthiness, as well as her ability to flee. This Court should share these concerns.

The district court made comprehensive findings explaining why Winner's history and characteristics weigh in favor of detention. These

---

[6]    Winner herself has acknowledged that the disclosure of the intelligence reporting could compromise sources and methods and called the intelligence reporting an "important" document. *See* Dkt. 163 at 7 n.7; Dkt. 108 at 67; Dkt. 109 at 4-10.

[7]    Violation of Section 793(e) is punishable, *inter alia*, by up to ten years' imprisonment. Winner's base offense level under the U.S. Sentencing Guidelines, increased by two levels for abuse of position of trust, is 31. *See* U.S.S.G. §§ 2M3.3; 3B1.3. Even with a criminal history category I, Winner's Guidelines range is substantial: 108-135 months.

findings are not clearly erroneous. Rather, they are amply supported by the record. Instead of restating their basis, the government refers this Court to the district court's opinion, Dkt. 163 at 10-12, and the Statement of the Facts above, which explain in detail evidence of (1) Winner's duplicity, (2) her attempts to prevent detection of her conduct, and (3) the general contempt Winner has expressed for the United States.

In arguing against detention, Winner again cites her service to the United States, humanitarian aspirations, family ties, and lack of criminal history. Winner Mot. at 17. The district court considered those points, but properly determined they were "significantly" outweighed by "the evidence pertaining to Defendant's character, her mental state, her conduct in the months before her arrest, and her lack of community ties." Dkt. 163 at 9. Winner's history and characteristics, too, therefore weigh in favor of detention.

### 4. Nature and Seriousness of Danger Posed by Release

The district court correctly found that "releasing Defendant prior to trial would pose a danger to the community, particularly to the national security," citing, *inter alia*, "the uncertainty with respect to Defendant's

level of knowledge or possession of classified information, together with evidence that she planned to anonymously release information to online news outlets and that she has antipathy toward the United States."[8] *Id.* at 14. This factual finding was well supported, not clearly erroneous.

Winner possesses knowledge of highly classified information and is unemployable in her most lucrative fields of expertise. She has already demonstrated her inclination and ability to reveal such information, and, if released, would have the additional incentive to commit further unauthorized disclosures in exchange for support of flight. *See Giordano*, 370 F. Supp. 2d at 1270 (explaining the court must consider "whether a defendant would flee and then engage in criminal acts to finance his flight"). Winner's complete lack of contrition, as evidenced by comments indicating that she thinks she did nothing wrong, underscores the likelihood of her fleeing and committing further disclosures. *See, e.g.*, Tr. at 112; Dkt. 109 at 4-10. A foreign intelligence service or other

---

[8] Danger under subsection (g)(4) is not limited to a threat of physical harm. *King*, 849 F.2d at 487 n.2 (citing applicable legislative history).

organization would likely seek to facilitate flight in exchange for, or to assist, disclosure of additional classified information.

Winner has the desire to flee to parts of the world from which it would be extremely difficult to compel her return. She has displayed a "strong intent to live and work abroad" in places such as Kurdistan, Iraq, Jordan, the Palestinian territories, and Afghanistan. Dkt. 163 at 14-15. She has written of a desire both to travel to the Middle East and meet with Taliban military leaders. In short, Winner was eager to leave the United States even before she was indicted, and "[t]his desire to live abroad is no doubt quickened by facing a felony charge." *Id.* at 15. Based on her history, Winner would be able to reside, work, own property, and speak the language in such areas.

In sum, the district court correctly found that each statutory factor "weigh[s] in favor of the Government," and the government has "presented other significant evidence relative to Defendant's risk of flight." *Id.* at 14.

### B.    No Conditions Can Reasonably Assure Winner's Appearance or the Safety of the Community

There is no realistic way to prevent further dissemination of classified information by Winner if she is released, and there is no reason to believe that she would obey an order limiting her communications.  As the district court noted, "[c]lassified information cannot be retrieved or un-disclosed once it is released, so the potential of harm to national security is too great a risk to place upon the promises of this Defendant." *Id.* at 16.  In fact, on October 14, 2017, just a few days prior to Winner promising the district court that she would refrain from media contact, she met with a member of the media.[9]  *Id.* at 16 n.12.

Moreover, the evidence showing that Winner "does not wish to be in America, may even wish to cause harm to national security, and has the means to live abroad," establishes that Winner "will flee despite these conditions and assurances." *Id.* at 15-16.  Accordingly, this Court should affirm the district court's finding that the conditions proposed by Winner are not sufficient to reasonably assure her appearance at trial.

---

[9]    *See* Kerry Howley, *The World's Biggest Terrorist Has a Pikachu Bedspread*, N.Y. MAG. (Dec. 22, 2017, http://nymag.com/daily/intelligencer/2017/12/who-is-reality-winner.html).

23

## III.  Winner Should Also Be Detained as a Danger to the Community

As explained, the Court need not reach Winner's argument that she cannot be detained as a danger to the community.  Nonetheless, Winner's argument is meritless.  As the government explained to the district court in its Sur-Reply in Opposition to the Defendant's Appeal of the Magistrate's Detention Order (Dkt. 160; hereinafter, "Government's Sur-Reply"), Winner's argument is inconsistent with both the plain language of the statute—which requires the court, regardless of which subsection of § 3142(f) triggered the detention hearing, to consider the factors set forth in (g) to determine whether *both* prongs of subsection (e) (risk of flight and dangerousness) are satisfied—and the case law.  *See also United States v. Holmes*, 438 F. Supp. 2d 1340 (S.D. Fla. 2005).  Rather than restate its arguments on these points, the government hereby incorporates by reference the Government's Sur-Reply.  For those reasons, and considering the evidence described above, Winner should also be detained as a danger to the community.

## CONCLUSION

For the foregoing reasons, this Court should affirm the district court's order detaining Winner pending trial.

Respectfully submitted, this 5th day of January, 2018.

BOBBY L. CHRISTINE
UNITED STATES ATTORNEY

*/s/ R. Brian Tanner*
R. Brian Tanner
Assistant United States Attorney
Georgia Bar No. 697615
brian.tanner@usdoj.gov

*/s/ Julie A. Edelstein*
Julie A. Edelstein
David C. Aaron
Trial Attorneys
U. S. Department of Justice
National Security Division
julie.edelstein@usdoj.gov

Post Office Box 8970
Savannah, GA 31412
912-652-4422

## **CERTIFICATE OF COMPLIANCE AND SERVICE**

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point Century School Book) using Microsoft Word 2016.

This brief complies with the type-volume limitations of Fed. R. App. P. 27(d)(2)(A) because it contains 4,665 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief was filed today through the Court's ECF system and thereby served on counsel of record at their court-registered e-mail addresses pursuant to Fed. R. App. P. 25(c)(1)(D) and 11th Cir. R. 25-3(a).

This 5th day of January, 2018.

BOBBY L. CHRISTINE
UNITED STATES ATTORNEY

*/s/ R. Brian Tanner*

R. Brian Tanner
Assistant United States Attorney
Georgia Bar No. 697615
brian.tanner@usdoj.gov

Post Office Box 8970
Savannah, GA 31412
912-652-4422

26