No. 17-15458

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

UNITED STATES,

*Plaintiff-Appellee*

v.

REALITY LEIGH WINNER,

*Defendant-Appellant.*

Filed with Classified
Information Security Officer

CISO _____

Date ___Jan. 19, 2018___

On Appeal from the United States District Court
for the Southern District of Georgia
No. 12-cv-03032 (Hon. Randall Hall)

## REPLY IN SUPPORT OF MOTION FOR
## RELEASE BEFORE JUDGMENT OF CONVICTION

Respectfully submitted,

*/s/Thomas H. Barnard*

Joe D. Whitley (Bar No. 756150)
Brett A. Switzer (Bar No. 554141)
**BAKER DONELSON**
3414 Peachtree Rd., NE Suite 1600
Atlanta, GA 30326
Tel: (404) 577-6000
JWhitley@bakerdonelson.com
BSwitzer@bakerdonelson.com

John C. Bell, Jr. (Bar No. 048600)
Titus T. Nichols (Bar No. 870662)
**BELL & BRIGHAM**
P.O. Box 1547
Augusta, GA 30903-1547
Tel: (706) 722-2014
John@bellbrigham.com
Titus@bellbrigham.com

*United States v. Winner*, No. 17-15458

Thomas H. Barnard (Bar No. 020982)
**BAKER DONELSON**
100 Light Street
Baltimore, MD 21202
Tel: (410) 685-1120
TBarnard@bakerdonelson.com

Matthew S. Chester (Bar No. 36411)
**BAKER DONELSON**
201 St. Charles Ave., Suite 3600
New Orleans, LA 70170
Tel: (504) 566-5200
MChester@bakerdonelson.com

Counsel for Defendant-Appellant

*United States v. Winner*, No. 17-15458

## CERTIFICATE OF INTERESTED PERSONS

Pursuant to Eleventh Circuit Rule 26.1-1, the undersigned counsel for

Defendant-Appellant Reality Leigh Winner hereby certifies that the following

persons and entities have an interest in the outcome of this case:

Aaron, David, U.S. Department of Justice, Attorney for Plaintiff-Appellee

Barnard, Thomas H., Attorney for Defendant-Appellant

Bell, Jr., John C., Attorney for Defendant-Appellant

Chester, Matthew S., Attorney for Defendant-Appellant

Christine, Bobby L., United States Attorney, U.S. Department of Justice, Attorney for Plaintiff-Appellee

Durham, James D., Former Assistant U.S. Attorney, U.S. Department of Justice, Attorney for Plaintiff-Appellee

Edelstein, Julie A., U.S. Department of Justice, Attorney for Plaintiff-Appellee

Epps, Brian K., U.S. Magistrate Judge, U.S. District Court for the Southern District of Georgia

First Look Media

Hall, Randall, U.S. District Judge, U.S. District Judge, U.S. District Court for the Southern District of Georgia

Nichols, Titus T., Attorney for Defendant-Appellant

Rafferty, Brian T., Assistant U.S. Attorney, U.S. Department of Justice, Attorney for Plaintiff-Appellee

*United States v. Winner*, No. 17-15458

Solari, Jennifer G., Assistant U.S. Attorney, U.S. Department of Justice, Attorney for Plaintiff-Appellee

Switzer, Brett A., Attorney for Defendant-Appellant

Tanner, R. Brian, Assistant U.S. Attorney, U.S. Department of Justice, Attorney for Plaintiff-Appellee

Whitley, Joe D., Attorney for Defendant-Appellant

Winner, Reality Leigh

No publicly traded company or corporation has had an interest in the outcome of this case or appeal.

Respectfully submitted,

_____/s/_____
Thomas H. Barnard
Arizona State Bar No. 020982

Counsel for Defendant-Appellant

## INTRODUCTION

Reading the Government's response, one would never know that virtually *every* defendant charged with disclosing or retaining national defense information under 18 U.S.C. § 793(e) has been released pending trial. By definition, all of those defendants had access to sensitive information, and the Government had some basis to believe they mishandled that information. Yet those defendants all were released because the only relevant issue was whether there were any conditions of release that could mitigate any risk of flight. As these cases demonstrate, there almost always are.

What is so unique about this case that justifies denying bail? The Government goes to great lengths to portray Ms. Winner as a spy- or terrorist-in-waiting. That portrait is fictional, and in any event has little relevance to the only question presented here: whether Ms. Winner poses a serious risk of flight. When improper considerations are stripped away, what remains is a loving daughter and sister; an outspoken environmentalist and humanitarian; a decorated veteran and linguist who allegedly disclosed one document, one time, to a news outlet, on a subject on immense public concern to the American people. Demonstrating her good faith, Ms. Winner has already agreed to a stringent set of release conditions that remove any conceivable risk of flight. How Ms. Winner possibly would flee under those conditions, the Government never explains. This Court should reject

the Government's scaremongering and end Ms. Winner's unprecedented and unlawful detention.

## I. Ms. Winner Is Entitled to Release Because the Government Has Not Shown a Serious Risk of Flight

### A. Flight Risk Is the Only Permissible Basis for Detention Here

As explained in her motion, because Ms. Winner has not been charged with one of the crimes listed in 18 U.S.C. § 3142(f)(1), the Bail Reform Act mandates her release unless the Government demonstrates "a serious risk that [she] will flee." 18 U.S.C. § 3142(f)(2)(A); Mot.5-10. "Rather than" arguing to this Court that Ms. Winner may be detained on grounds of dangerousness, the Government "incorporates by reference" its arguments below. Opp.24. But this Court "will not consider any arguments a party attempts to incorporate by reference to filings in the district court." *Haynes v. McCalla Raymer, LLC*, 793 F.3d 1246, 1250 (11th Cir. 2015). Any contention that Ms. Winner may be detained on any basis other than flight risk therefore is "waived" and "not properly presented for review." *Four Seasons Hotels & Resorts, B.V. v. Consorcio Barr S.A.*, 377 F.3d 1164, 1167 n.4 (11th Cir. 2004).

### B. The District Court Ordered Detention Based on Dangerousness, and the Government's Response Exacerbates that Error

Ms. Winner's motion explained how improper concerns about dangerousness pervade the decision below. Mot.10-13. The district court even found dangerousness "by a preponderance," R.163 at 17, when the statute requires

"clear and convincing evidence." 18 U.S.C. § 3142(f); Mot.20. The Government does not contend otherwise. The Government notes that the district court referenced the magistrate judge's bare recitation of the legal standards, Opp.7 n.3, but that does not erase or excuse the court's plain misstatement of the law.

More broadly, rather than defend the district court's stated rationale, the Government suggests that this Court may affirm by excising any concerns about dangerousness from the decision below, or by twisting them to support a finding of flight risk. *See* Opp.1, 11-12, 24. But dangerousness was not just a rhetorical flourish, a minor building block of the analysis, or a secondary alternative rationale—it was the heart of the district court's reason for depriving an American citizen of her liberty before trial. Indeed, the Government does not dispute that the district court itself described *flight risk*, not dangerousness, as a secondary, "[a]dditional[]" consideration on which the Government presented "other significant evidence." R.163 at 14; Mot.12-13.

What is more, while purporting to defend the decision on flight-risk grounds alone, the Government continues to invoke dangerousness at every turn. For example, the Government repeats the district court's assertion that "[c]lassified information cannot be retrieved or un-disclosed once it is released, so the potential of harm to national security is too great a risk to place upon the promises of this Defendant." Opp.23 (alteration in original) (quoting R.163 at 16). The

3

Government also asserts that disclosing classified information "by definition ...

can be expected to cause exceptionally grave damage to the national security," and

that the offense alleged here "did result in exceptionally grave harm." Opp.16

(emphasis and quotation marks omitted). These arguments fail on their own terms.

████████████████████████ ████████████████████████

███████████████████████████████████████████████████

███████████████  ████████████████  ████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████ Concerns about the disclosure of additional classified

information, moreover, would apply to virtually any case brought under § 793(e),

yet Congress has not included that offense on the list of offenses that raise a

presumption of pretrial detention. *See* 18 U.S.C. § 3142(e)(3). In any event, these

arguments have absolutely nothing to do with flight risk—which is why virtually

every defendant charged under § 793(e) has been released on bail.

The Government also notes repeatedly that Ms. Winner "researched whether

it was possible to insert a thumb drive into a Top Secret computer without being

detected, and she then inserted a thumb drive (which the government never

recovered) into a Top Secret computer." Opp.1; *see id.* at 8-9; *id.* at 20 (citing

R.163 at 10-12). With a remarkable lack of candor, however, the Government

4

never acknowledges that it conducted a forensic analysis of the system logs and found no evidence Ms. Winner downloaded any information, classified or otherwise, onto the thumb drive. R.100 at 4 n.2. Ms. Winner explained to FBI agents, moreover, that she inserted the thumb drive to "see how [colleagues] were [uploading] unclass[ified] pictures," and perhaps to download her "resume, which had just been approved." R.100-1 at 67-68. This incident shows nothing of substance about dangerousness, and nothing at all about flight risk.

Most outrageously, the Government suggests that, if released, Ms. Winner "would have the … incentive to commit further unauthorized disclosures in exchange for support of flight," perhaps from "[a] foreign intelligence service or other organization." Opp.21-22. This incendiary allegation that, if released, Ms. Winner might commit outright *treason* rests on nothing but rank speculation. The district court never suggested Ms. Winner would trade classified information for assistance from a foreign power (or anyone else, for that matter), and there is absolutely nothing in the record to support it. Indeed, the central allegation against Ms. Winner in this very case is that she was *too eager* to refute public denials ▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮

**C.    Stripped of Improper Consideration of Dangerousness, the Government's Response Does Not Show a Serious Risk of Flight**

Once improper arguments about harm to the community are removed from the equation, it is clear that conditions of release exist that will "reasonably assure

5

[Ms. Winner's] appearance" at trial. 18 U.S.C. § 3142(e). The Government's arguments to the contrary do not withstand scrutiny nor meaningfully distinguish this case from virtually any case under § 793(e).

Most fundamentally, the Government never explains or offers any evidence to show how Ms. Winner possibly would flee while wearing a monitoring bracelet and having surrendered her passport. Mot.18-19. The Government does not suggest, for example, that Ms. Winner has training in circumventing electronic or physical surveillance, or that she has a history of evading law enforcement or missing court appearances. The Government also has no response to the fact that Ms. Winner's mother, with whom Ms. Winner is extremely close, has already moved to Augusta, agreed to serve as her daughter's custodian, and offered to post her home as bond. Mot.18-19; R.120 at 121; R.98 at 1-2.

The Government's only response is to reiterate the district court's conclusory assertion that Ms. Winner "will flee despite these conditions and assurances." Opp.23 (quoting R.163 at 16). But it is the *Government's burden* to demonstrate, by a preponderance of the evidence, that "no condition or combination of conditions will reasonably assure" Ms. Winner's appearance. 18 U.S.C. § 3142(e). A bare assertion with no factual basis cannot possibly satisfy that burden.

The Government also asserts that "there is no reason to believe that [Ms. Winner] would obey an order *limiting her communications*," noting that she met with a journalist. Opp.23 (emphasis added). Even if that argument were correct, it would not justify pretrial detention, just more restrictive conditions of release. And it is not correct. As the Government acknowledges, the meeting occurred "a few days *prior* to Winner promising the district court she would refrain from media contact." *Id.* (emphasis added). And what Ms. Winner promised was to forswear media contact *if the court made that a condition of her release*. R.97 ¶15. She was not released, nor did the court otherwise restrict her right to speak to journalists. There was nothing improper in exercising her First Amendment rights. If this Court restricts those rights or imposes any other condition of release, Ms. Winner will obey it.

Even setting aside the stringent release conditions Ms. Winner has agreed to, the Government's arguments lack merit. The Government first points to the gravity of the charged offense and the possible sentence Ms. Winner faces if convicted. Opp.15-16, 19 & n.7. By definition, however, those facts do not distinguish this case from any case under § 793(e). And Ms. Winner has identified no fewer than 13 cases under that statute—many involving alleged conduct of a similar or greater magnitude than here—where the defendant was released on bail. Jeffrey Sterling, a former CIA officer, for example, was charged with disclosing

classified information about efforts to sabotage Iranian nuclear research to a New York Times reporter. *United States v. Sterling*, 1:10-cr-485 (E.D. Va.). Lawrence Franklin was charged with disclosing classified information regarding U.S. policy towards Iran to pro-Israel lobbyists and an Israeli diplomat. *United States v. Franklin*, 1:05-cr-225 (E.D. Va.). David Petraeus, former four-star general and CIA Director, was charged with sharing classified information about war strategy, intelligence capabilities, and the identity of covert operatives with his biographer and mistress. *United States v. Petraeus*, 3:115-cr-47 (W.D.N.C.).

The list goes on. R.96-1 at 15-20. Each of these defendants was released on bail. And the Government does not dispute that the only case it has ever identified where a defendant charged under § 793(e) was detained pending trial bears no resemblance to this case. Mot.14.

Next, the Government asserts that it has strong evidence that Ms. Winner in fact disclosed the document in question to a news outlet without authorization. Opp.17-18. But that is not enough to secure a conviction. As explained in Ms. Winner's motion, the Government also must prove that the document in question contained national defense information (NDI) —that is, information that was "potentially damaging to the United States or … useful to an enemy of the United States," and was "closely held" by the U.S. government. *United States v. Morison*, 844 F.2d 1057, 1071-72 (4th Cir. 1988); *see also United States v. Rosen*, 445 F.

Supp. 2d 602, 620-21 (E.D. Va. 2006); Mot.15-16. The Government suggests that the classified nature of the document alone will satisfy this element of the offense. Opp.18. But the Government ignores Ms. Winner's observation that, according to one expert, more than half of all classified information is not NDI. Mot.15-16. It also ignores evidence that the information contained in the document at issue here was already in the public domain at the time of Ms. Winner's alleged offense. *Id.* If the Court harbors any doubt about this strength of this defense, just compare the classified document with the following two documents, which were in the public domain at the relevant time: ██████████████████████

████████████████████████████████████ ████████
████████████████████████████████████
██████████ █████████████████████████
████████████████████████████

The Government also asserts that Ms. Winner "acknowledged" that the document in question is "important" and "could compromise sources and methods." Opp.19 n.6. That is grossly misleading. Ms. Winner acknowledged that the document could compromise sources and methods only "[i]f they haven't been already." R.100-1 at 68. And she "figured that whatever we were using had already been compromised, and that this report was just going to be like … one drop in the bucket." *Id.* at 69. Ms. Winner thus believed that the information

contained in the document was *not* NDI—negating the required mental state and providing another complete defense to the charges. *See* Mot.15.

Next, the Government points to "(1) Winner's duplicity, (2) her attempts to prevent detection of her conduct, and (3) the general contempt Winner has expressed for the United States." Opp.20. The Government also asserts the district court determined that those considerations "outweighed" other concededly positive elements of Ms. Winner's character. *Id.* That weighing, however, is tainted by the district court's improper consideration of dangerousness. Regardless, it not a factual finding but a legal conclusion, which this Court reviews de novo. *See* Mot.5. And the Government does not dispute any aspect of Ms. Winner's biography. She is a loving daughter and sister from a small Texas town; a decorated veteran; an outspoken, sarcastic environmentalist and humanitarian; a vegan, yoga teacher, and exercise enthusiast; and the lawful owner of a pink AR-15 and "a Pikachu [b]edspread." Kerry Howley, *"The World's Biggest Terrorist Has a Pikachu Bedspread": Not every leaker is an ideological combatant like Edward Snowden and Chelsea Manning. Reality Winner may be the unlikeliest of all.*, N.Y. Mag. (Dec. 22, 2017), http://nym.ag/2kMcgVU; Opp.23 n.9; Mot.3-4; R.100-1 at 8.

Finally, the Government throws around words like "terrorism" and "Taliban," as well as the names of various Middle Eastern countries, asserting that

Ms. Winner has the desire and skills to travel and reside abroad. Opp.6, 9, 22. This attempt to use Ms. Winner's honorable military service against her is baseless and offensive. She developed her language skills and interest in the Middle East through her service to this country, even earning a commendation for the role she played in U.S. counterterrorism campaigns. Mot.3. Ms. Winner has never lived or served abroad, and has fewer resources than someone like Paul Manafort, who has extensive foreign connections, faces similarly serious charges, and nonetheless recently obtained released pending trial. Mot.3, 13-14. The Government disputes none of this. The fact that Ms. Winner served honorably in the fight against international terrorism weighs strongly in *favor* of release, not against it.

## II.    Ms. Winner's Detention Is Impeding Trial Preparations

The Government does not dispute that Ms. Winner's detention is impeding her ability to consult with counsel and prepare for trial. Mot.23. Trial was originally scheduled for October 23, 2017, and is now set for March 19, 2018, but recent proceedings before the magistrate judge have made clear that the existing trial date is not realistic. *See* R.33, 66, 199. This case may not come before a jury for quite some time. If this Court does not intervene, Ms. Winner therefore faces the prospect of many additional months of unprecedented and unlawful pretrial detention, which will only further impede her defense. This Court should order Ms. Winner's immediate release.

11

## CONCLUSION

For the foregoing reasons, the decision below should be reversed.

*/s/Thomas H. Barnard*

Joe D. Whitley (Bar No. 756150)
Brett A. Switzer (Bar No. 554141)
**BAKER DONELSON**
3414 Peachtree Rd., NE Suite 1600
Atlanta, GA 30326
Tel: (404) 577-6000
JWhitley@bakerdonelson.com
BSwitzer@bakerdonelson.com

John C. Bell, Jr. (Bar No. 048600)
Titus T. Nichols (Bar No. 870662)
**BELL & BRIGHAM**
P.O. Box 1547
Augusta, GA 30903-1547
Tel: (706) 722-2014
John@bellbrigham.com
Titus@bellbrigham.com

Thomas H. Barnard (Bar No. 20982)
**BAKER DONELSON**
100 Light Street
Baltimore, MD 21202
Tel: (410) 685-1120
TBarnard@bakerdonelson.com

Matthew S. Chester (Bar No. 36411)
**BAKER DONELSON**
201 St. Charles Ave., Suite 3600
New Orleans, LA 70170
Tel: (504) 566-5200
MChester@bakerdonelson.com

Counsel for Defendant-Appellant

## CERTIFICATE OF COMPLIANCE

The foregoing motion complies with the type-volume limitation of Federal Rules of Appellate Procedure 27(d)(2)(C) and 32(a)(5)(A), (6). The motion contains 2598 words, excluding those parts of the motion exempted by Eleventh Circuit Rule 26.1-3(c). This motion complies with the typeface and type style requirements of Federal Rule of Appellate Procedure 32(a)(5) and 32(a)(6) because this motion has been prepared in a proportionately spaced typeface using Microsoft Word 2010 in Times New Roman 14-point font.

Respectfully submitted,

/s/
Thomas H. Barnard
Arizona State Bar No. 020982

Counsel for Defendant-Appellant

### CERTIFICATE OF FILING AND SERVICE

Pursuant to Federal Rule of Appellate Procedure 25 and Eleventh Circuit

Rule 25, I hereby certify that on January 19, 2017, I caused the foregoing motion

to be filed with the Court, and to be served on counsel for the Government, by

hand.

Respectfully submitted,

    /s/
Thomas H. Barnard
Arizona State Bar No. 020982

Counsel for Defendant-Appellant